THE HONORABLE KYMBERLY K. EVANSON

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| GREAT LAKES INSURANCE SE,<br><br>  Plaintiff,<br><br>  v.<br><br>MYERS REGULINSKI 1996 REVOCABLE TRUST,<br><br>  Defendant. | Civil Action<br>Case. No. 2:21-cv-01241-KKE<br><br>**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>NOTE ON MOTION CALENDAR:<br>Friday, June 7, 2024 |

COMES NOW the Plaintiff, GREAT LAKES INSURANCE SE, by and through its undersigned attorneys, and pursuant to Rule 56 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Western District of Washington files this Motion for Summary Judgment.

### INTRODUCTION

1. Plaintiff seeks summary judgment on the First Cause of Action set forth in its Complaint for Declaratory Judgment contending that Defendant MYERS REGULINSKI 1996 REVOCABLE TRUST (hereinafter REGULINSKI) was in breach of the policy's

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW
SUITE 500
SEATTLE, WASHINGTON  98106-1271
(206) 623-4990

express warranty requiring that the Scheduled Vessel's fire extinguishing equipment "…is properly installed and is maintained in good working order. This includes the weighing of tanks once a year, certification/tagging and recharging as necessary." Dkt. #1 at p. 4.

2.     Plaintiff seeks summary judgment on the Second Cause of Action set forth in its Complaint for Declaratory Judgment contending that the Defendant REGULINSKI was in breach of the policy's express warranty requiring that the Scheduled Vessel was seaworthy at all times during the duration of the insuring agreement. Dkt. #1 at p. 6.

3.     Plaintiff seeks summary judgment on the Third Cause of Action set forth in its Complaint for Declaratory Judgment contending that the Defendant REGULINSKI failed to disclose facts material to the Underwriter's decision to insure the Scheduled Vessel or in the alternative to the decision regarding the premium to be charged, in breach of the policy and thereby voiding coverage. Dkt. #1 at p. 8.

## SUPPORTING EVIDENCE

This Motion is supported by the Declarations filed herewith of Beric Anthony Usher, Captain David Ghidoni, and Steven E. Goldman, with attached Exhibits.

## STATEMENT OF FACTS

On September 2, 2020, Overseas Insurance Agency, Inc. California, (hereinafter "Overseas") acting as the agent for MYERS REGULINSKI 1996 REVOCABLE TRUST (hereinafter "REGULINSKI") submitted an email to Concept Special Risks Ltd. attaching a partially submitted application seeking a Quote for a policy to be issued to the Defendant which would afford coverage on a vessel described as 1999 Amel Super Maramu 53 ft sailing vessel (hereinafter "the Vessel") with a hull value said to be $315,000.00. Declaration of Beric Anthony Usher (hereinafter, "Usher Declaration"), ¶13. The email and partially submitted application are attached to the Declaration of Steven E. Goldman (hereinafter, "Goldman Decl.") as Exhibit 1.

{29758-01042376;1}
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT– Page 2
(Case No. 2:21-cv-01241-KKE)

Le Gros Buchanan
& Paul
4025 DELRIDGE WAY SW
SUITE 500
SEATTLE, WASHINGTON  98106-1271
(206) 623-4990

1   At all times relevant hereto, Concept Special Risks Ltd. (hereinafter "Concept") was

2   the authorized underwriting and claims handling agent for Great Lakes Insurance SE

3   (hereinafter "GLI").  Usher Decl., ¶9.  As the authorized underwriting agent, Concept's role was

4   to receive and to then evaluate applications for the marine insurance coverage that they were

5   authorized to write.  *Id.*, ¶9.  Overseas Insurance Agency (hereinafter "Overseas") was the

6   surplus lines broker acting as the agent of REGULINSKI in the matter which is the subject of

7   this litigation.  *Id.*, ¶¶11-13.  Overseas did not at any time act as an agent for Concept or for

8   Great Lakes.  *Id.*

9   On or about September 8, 2020, Neil R. Burton, an underwriter working under Usher's

10   direct supervision, responded to Overseas' email with a Quote offering to insure the Vessel at an

11   Agreed Value of $225,000.00 subject to the provisions of Concept's policy form, SYP/8/PPO.

12   *Id.*, ¶14; Goldman Decl., Exh. 2.

13   On or about October 3, 2020, Overseas submitted to Concept a completed and executed

14   application for a policy of marine insurance.  Usher Decl., ¶16; Goldman Decl. Exh. 3.  As part

15   of the executed application, REGULINSKI also submitted two (2) surveys, one dated

16   September 7, 2011 (hereinafter "the 2011 Survey Report") and a second dated September 19-22,

17   2020 (hereinafter "the 2020 Survey Report").  Usher Decl. ¶17; Goldman Decl. Exhs. 4-5.  At

18   IV Findings, page 31 of 42 (CSRYP/185326_UF000084), the 2011 Survey Report states, "[t]he

19   fixed firefighting system inspection tag has not been certified."  Usher Decl. ¶17; Goldman

20   Decl. Ex 4, p. 31.  The 2011 Survey Report further states, "[h]ave inspected by qualified fire

21   equipment technician."  *Id.*  There is no reference whatsoever to any deficiencies in regard to the

22   Vessel's fire extinguishing equipment anywhere in the 2020 Survey Report.  Goldman Decl.

23   Exh. 5.

24   Supplemental to, and a critical part of, the application process directed toward

25   obtaining a policy of marine insurance via Concept Special Risks Ltd., a Letter of Survey

26   Recommendations Compliance (hereinafter "LOC") signed and dated October 2, 2020 was also

{29758-01042376;1}
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT– Page 3
(Case No. 2:21-cv-01241-KKE)

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW
SUITE 500
SEATTLE, WASHINGTON  98106-1271
(206) 623-4990

submitted.  Usher Decl., ¶20; Goldman Decl. Exh. 6.

> The LOC states:
> I certify, as owner of the above vessel, that all recommendations pertaining to the above vessel contained with the detailed survey submitted here, have been complied with, other than those listed below…
>
> *Id.*.

The LOC identifies multiple outstanding recommendations set forth in the two surveys, along with the date(s) upon which completion of the work is expected.  *Id.*.  However, there was no reference to nor any mention of the Vessel's fire extinguishing equipment in the completed and signed LOC.  Usher Decl., ¶21.

Based upon the foregoing, the Concept underwriter naturally inferred that the recommendations with regard to the Vessel's fire extinguishing equipment had been attended to, and that there were no deficiencies to be noted or reported at the date of the submission of the application for coverage which eventuated in issuance of Policy No. CSRYP/185326.  Usher Decl., ¶¶21-22.

In reliance on the material information disclosed at this time, Concept agreed to issue on behalf of Great Lakes Policy No. CSRYP/185326 (hereinafter "the Policy").  Usher Decl., ¶22. Goldman Decl., Exh. 7.

The Policy states, in relevant part:

> **Assured's Agent:**    Overseas Insurance Agency, Inc California
> 1274 Scott Street
> San Diego
> CA 92106

Goldman Decl., Exh. 7, p. 1 (CSRYP/185326_UF000203).

The Policy states, in relevant part:

> **1. Definitions**
> …
> k. 'Seaworthy' means fit for the Scheduled Vessel's intended purpose. Seaworthiness applies not only to the physical condition of the hull, but to all its

{29758-01042376;1}
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT– Page 4
(Case No. 2:21-cv-01241-KKE)

Le Gros Buchanan
& Paul
4025 DELRIDGE WAY SW
SUITE 500
SEATTLE, WASHINGTON  98106-1271
(206) 623-4990

parts, equipment and gear and includes the responsibility of assigning an adequate crew.  For the Scheduled Vessel to be seaworthy, it and its crew must be reasonably proper and suitable for its intended use.

*Id.*, p. 3 (CSRYP/185326_UF000205).

The Policy states, in relevant part:

**9. General Conditions & Warranties**
…
b. It is warranted that the Scheduled Vessel is seaworthy at all times during the duration of this insuring agreement.  Breach of this warranty will void this insuring agreement from its inception.

*Id.*, p. 12 (CSRYP/185326_UF000214).

The Policy states, in relevant part:

**9. General Conditions & Warranties**
…
h. If you have used a broker to effect coverage, it is hereby agreed that your brokers or any substituted brokers (whether surplus line approved or otherwise), shall be deemed to be exclusively the agents of you and not of us in any and all matters relating to, connected with or affecting this insurance.  Any notice given or mailed by or on behalf of us to the said brokers in connection with or affecting this insurance, or its cancellation, shall be deemed to have been delivered to you.

*Id.*, p. 12 (CSRYP/185326_UF000214).

The Policy states, in relevant part:

**9. General Conditions & Warranties**
…
k. If the Scheduled Vessel is fitted with fire extinguishing equipment, then it is warranted that such equipment is properly installed and is maintained in good working order.  This includes the weighing of tanks once a year, certification/tagging and recharging as necessary.

*Id.*, p. 13 (CSRYP/185326_UF000215).

The Policy states, in relevant part:

**9. General Conditions & Warranties**
…

{29758-01042376;1}
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT– Page 5
(Case No. 2:21-cv-01241-KKE)

Le Gros Buchanan
& Paul
4025 DELRIDGE WAY SW
SUITE 500
SEATTLE, WASHINGTON  98106-1271
(206) 623-4990

m. This contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstances material to our acceptance or continuance of this insurance. No action or inaction by us shall be deemed a waiver of this provision.

*Id.*, p. 13 (CSRYP/185326_UF000215).

The Policy states, in relevant part:

**9. General Conditions & Warranties**

…

t. Where any term herein is referred to as a 'warranty' or where any reference is made herein to the word 'warranted', the term shall be deemed a warranty and regardless of whether the same expressly provides that any breach will void this insuring agreement from inception, it is hereby agreed that any such breach will void this policy from inception.

*Id.*, p. 14 (CSRYP/185326_UF000216).

The Policy states, in relevant part:

**11. Service of Suit, Choice of Law and Forum**

**It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York.**

*Id.*, p. 16 (CSRYP/185326_UF000218) [emphasis in original].

On August 16, 2021, Concept received notice from Overseas of an incident the day before, on August 15, 2021, in which the Vessel sustained damage from a lightning strike. Goldman Decl., Exh. 8. Upon Concept's receipt of this notice, Concept retained Sedgwick, licensed adjusters and surveyors, to investigate the incident. Usher Decl., ¶¶26-27.

Capt. David Ghidoni (hereinafter "Ghidoni") of Sedgwick was tasked with investigating the loss to the Vessel. *See* Declaration of Capt. David Ghidoni (hereinafter "Ghidoni Decl."), ¶10. Capt. Ghidoni confirmed by email dated August 17, 2021 to Stephen Regulinski that he would be securing a damage report in order to complete an estimate of

{29758-01042376;1}
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT– Page 6
(Case No. 2:21-cv-01241-KKE)

Le Gros Buchanan
& Paul
4025 DELRIDGE WAY SW
SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990

repairs to the vessel.  Goldman Decl., Exh. 9.

Capt. Ghidoni contacted the Sedgwick office in Panama to perform a post-loss survey of the Vessel in order to determine the cause of the loss and the quantum of the resulting claim.  Ghidoni Decl., ¶11.  The first report (hereinafter "the Sedgwick Report") of surveyors Miguel Stempel (hereinafter "Stempel") and Jaime Lobo (hereinafter "Lobo") of Sedgwick dated August 25, 2021 is attached to the Goldman Declaration as Exhibit 10.  The Sedgwick Report states the conclusions of Stempel and Lobo that the Vessel had suffered a lightning strike while docked at the Vista Mar Marina located in San Carlos, Panama, causing a fire inside the main cabin.  Ghidoni Decl., ¶13, Goldman Decl., Exh. 10, p. 4.

Stempel and Lobo observed the fire suppression bottle in the engine room was empty and without proper inspection date labels.  Ghidoni Decl., ¶14, Goldman Decl., Exh. 10, pp. 6 and 10.

In correspondence with Ghidoni, REGULINSKI disclosed that multiple unsuccessful attempts were made between 2012 and 2017 to have the Vessel's fire-fighting equipment properly certified and tagged.   Ghidoni Decl., ¶¶15-18; Goldman Decl., Exh. 11.  Nonetheless, at the inception of the Policy and at the time of the fire loss that is the subject of this suit, the vessel's fire extinguishing equipment had never been properly certified and tagged and was never in compliance with the Policy's express fire extinguisher warranty.  Usher Decl., ¶19; Ghidoni Decl., ¶18.

In the opinion of Ghidoni, the Vessel was in unseaworthy condition at the time of the fire on August 15, 2021 due to the fact that the fire extinguishing equipment was uninspected at that time, and had not been in compliance with the requirements of the policy's express warranty for a period of ten (10) years prior to August 15, 2021, making the Vessel unfit for its intended purpose as defined by the Policy.  Ghidoni Decl., ¶¶19-21.

Based on Ghidoni's report, Concept and Usher were advised (1) that the vessel's fire extinguishing equipment was uninspected at the time of the lighting strike, (2) that because of

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW
SUITE 500
SEATTLE, WASHINGTON  98106-1271
(206) 623-4990

the Insured's failure to have the Vessel's fire suppression system inspected, the vessel had been in unseaworthy condition for almost a full decade prior to the inception of coverage and the August 15, 2021 date of loss, and (3) that the LOC signed and dated October 2, 2020 misrepresented that the recommendations regarding the Vessel's fire extinguishing equipment set forth in the 2011 Survey Report and the 2020 Survey Report had not in fact been attended to or completed by REGULINSKI.  Usher Decl., ¶27.

From the correspondence following the loss, Concept and Usher learned for the first time that these Insureds had never, going all the way back to 2012, been able to comply with the policy warranty of which they were fully aware concerning the requirement that the vessel's fire extinguishing equipment be inspected, certified, and tagged annually.  Usher Decl., ¶28; Goldman Decl., Exh. 11.

As a result of the facts uncovered during Sedgwick's investigation, Concept learned that the Insureds had clearly breached the policy's express warranty regarding the vessel's fire extinguishing equipment, that the LOC had falsely represented that the survey recommendations on the subject of the Vessel's firefighting equipment had been complied with, and that the Vessel was unseaworthy at the inception of the Policy, at the time of the loss, and for almost a full decade prior to the date of the loss.  Usher Decl., ¶29.

Usher's long-standing policy as Senior Underwriter at Concept is to always require that all survey recommendations have been completed or identifying which have not been completed and the expected completion date.  *Id.*, ¶30.

The LOC assured Concept that the Recommendations in the 2011 Survey Report and the 2020 Survey Report had been complied with.  Goldman Decl., Exh 6.  As a prudent and intelligent underwriter with thirty-five (35) years of experience in the marine insurance industry, it is Usher's judgment that these facts are among the most germane to deciding whether to issue a policy, what premium to charge, and what terms and conditions to require.  Usher Decl., ¶31.

Accurate statements in the LOC regarding recommended service and repairs which are

{29758-01042376;1}
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT– Page 8
(Case No. 2:21-cv-01241-KKE)

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW
SUITE 500
SEATTLE, WASHINGTON  98106-1271
(206) 623-4990

completed or still outstanding are material because they could and likely would influence the mind of a prudent and intelligent underwriter in determining whether to accept the risk and/or on what terms because the condition of the vessel is an indicator of future risk. *Id.*, ¶32. Therefore, truthful answers to these questions were material to Usher's decision as a prudent and intelligent underwriter because false answers would only result in a faulty evaluation of the risk. *Id.*.

The purpose of requesting details of any outstanding survey recommendations is to enable Concept to determine if they are merely cosmetic in nature or if they could affect policy terms. *Id.*, ¶33. If there are outstanding recommendations which could affect the seaworthiness of the vessel, then the underwriters at Concept evaluating the application would refuse to issue a policy on any terms. *Id.*

Usher does not consider survey recommendations on the subject of the Vessel's fire extinguishing equipment to be merely cosmetic in nature, and indeed the 2011 survey refers to the situation concerning the firefighting equipment as a "Deficiency" "needing attention." Usher Decl., ¶34.

Even where an insured failure to comply with certain survey recommendations would not necessarily have rendered the vessel unseaworthy, accurate statements in the LOC regarding any outstanding survey recommendations would have been material because they could and likely would influence the mind of a prudent and intelligent underwriter in determining the policy terms, including, but not limited to, additional conditions or warranties, operational limitations, and what premium to charge. *Id.*, ¶35.

In his Declaration, Usher states with absolute authority that had the Defendants truthfully disclosed that recommendations regarding the Vessel's fire extinguishing equipment had in fact never been attended to, over the course of almost a full decade, the insurance coverage sought would have been declined. *Id.*, ¶36.

In his Declaration, Usher states that it is basic that Concept requires that all

{29758-01042376;1}
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT– Page 9
(Case No. 2:21-cv-01241-KKE)

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW
SUITE 500
SEATTLE, WASHINGTON  98106-1271
(206) 623-4990

representations as to material facts be truthful and accurate since by definition disclosures of material information are reviewed and evaluated by the underwriter in order to decide whether to respond with a Quote, whether to ultimately agree to issue a policy, and what premium to charge. *Id.,* ¶37.

In his Declaration, Usher states that it is the most basic and essential element of marine underwriting that the evaluation of the risk and the premium to be charged must absolutely be based on the material information demanded in the application form and the entire accompanying process, and no prudent or intelligent marine underwriter could possibly just ignore the fact that the vessel's firefighting equipment was deficient as described in the 2011 Survey Report and the 2020 Survey Report. *Id.,* ¶38.

Underwriters could never condone or provide coverage for a Vessel which is not in full compliance with a provision in the policy which is expressed as a warranty. *Id.,* ¶39.

In Usher's view as an intelligent and reasonable marine underwriter, it would have been careless, even negligent on his part to have been made aware of the decade-long failure to have the deficiency regarding the fire extinguishing equipment dealt with and to still have issued a policy of marine insurance notwithstanding such awareness. *Id.,* ¶40.

When any Quotation request, application, or LOC comes into the Concept facility for review, the underwriters have no ability to judge the nature of the risk being presented by any means other than the information disclosed therein. *Id.,* ¶41. Accordingly, Usher and the underwriters acting under his direct supervision rely completely on the compliance by the Assureds and brokers acting on their behalf with the admittedly onerous but critical obligations imposed by the principles of *uberrimae fidei* or "utmost good faith." *Id.,* ¶41.

Great Lakes first applied to be a surplus lines carrier in New York State. *Id.,* ¶42. Great Lakes maintains bank accounts in New York State. *Id.,* ¶43. Great Lakes accepts service of process through attorneys in New York. *Id.,* ¶44. Great Lakes is a wholly owned subsidiary of Munich Re, which owns American Re, and the offices of both Munich Re and

{29758-01042376;1}

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT– Page 10
(Case No. 2:21-cv-01241-KKE)

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW
SUITE 500
SEATTLE, WASHINGTON  98106-1271
(206) 623-4990

Munich American Reassurance Company are located in New York.  *Id.,* ¶45.

## **LEGAL ARGUMENT**

### 1.  Choice of Law

Where there exists a rule of federal admiralty law, policies of marine insurance are governed by federal admiralty law.  *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310; 1955 A.M.C. 467 (1955).  If there is an entrenched federal rule, then the analysis is complete and that entrenched rule applies.  *Id.*, at 314 ("And States can no more override such judicial rules validly fashioned than they can override Acts of Congress.").  This rule applies to all policies of marine insurance, on both commercial craft and private pleasure craft.  *Acadia Ins. Co. v. McNeil*, 116 F.3d 599, 602; 1997 A.M.C. 2409 (1st Cir.1997), *Sirius Ins. Co. (UK) Ltd. v. Collins*, 16 F.3d 34, 36; 1994 A.M.C. 1683 (2d Cir.1994), *North American Specialty Ins. Co. v. Bader*, 58 F.Supp.2d 493, 497 (D.N.J.1999).[1]  However, where there exists no established rule of federal admiralty law, state law will control.  *Wilburn Boat*, at 315.

As detailed further below, the issues of *uberrimae fidei* and unseaworthiness are governed by entrenched rules of federal admiralty law.  *See cases analyzed infra*.  Therefore, under *Wilburn Boat*, it is impermissible to look to state law to resolve these issues.  *Id.* at 314.

With respect to the Policy's express fire extinguisher warranty, it must be noted that the United States Supreme Court has spoken, and on February 21, 2024 issued a unanimous 9-0 ruling affirming the validity and requiring the enforcement of the exact same Choice of

---

[1] The first sentence of GLI's choice of law clause merely tracks this statement of the law.  Ex 8, p. 16.

Le Gros Buchanan
& Paul
4025 DELRIDGE WAY SW
SUITE 500
SEATTLE, WASHINGTON  98106-1271
(206) 623-4990

Law clause which is at issue in the present case. In the case of *Great Lakes Insurance SE v. Raiders Retreat Realty Co., LLC,* 144 S.Ct. 637 (2024), the ruling of the Third Circuit was reversed, and the precise choice of law clause which is also applicable in the present case was held to be valid and enforceable, state public policy notwithstanding.  Therefore, there can be no infringement of state law into this litigation on the breach of the fire extinguisher warranty.  If there is an established rule of federal maritime law dealing with breach of this particular warranty, then that established rule must govern this Court's disposition of Plaintiff's Motion asserting that it is entitled to an award of summary judgment for breach of that warranty.  However, if there exists no such established rule of federal maritime law, then the New York State law called for in the Policy's Choice of Law clause must be referred to by this Court in resolving the Plaintiff's pending Motion for Summary Judgment.  By a unanimous 9-0 ruling, the decision of the United States Supreme Court has put to rest any further argument or dispute that counsel for the Defendants in the instant matter might seek to assert.

  Regardless of whether this Court now chooses to apply federal maritime law or New York State to resolve Plaintiff's Summary Judgment motion, the outcome must be the same.  Under both federal admiralty law and New York law, express warranties must be strictly, literally complied with.  *Lloyd's of London v. William Pagan-Sanchez,* 539 F.3d 19 (1st Cir. 1990); *Great Lakes Insurance SE v. Wave Cruiser LLC*, 36 F.4th 1346, 1354 (11th Cir.2022) *St. Paul Fire & Marine Ins. Co. v. Board of Com'rs of Port of New Orleans*, 418 Fed. Appx. 305 (5th Cir.2011), *Great Lakes Reinsurance (UK) PLC v. Durham Auctions Inc.*, 585 F.3d 236; 2010 A.M.C. 185 (5th Cir.2009), *Great Lakes Reinsurance (UK) PLC v. Vasquez*, 341 Fed.Appx. 515 (11th Cir.2009), *Stoot v. Fluor Drilling Services, Inc.*, 851 F.2d 1514; 1989

{29758-01042376;1}
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT– Page 12
(Case No. 2:21-cv-01241-KKE)

Le Gros Buchanan
& Paul
4025 DELRIDGE WAY SW
SUITE 500
SEATTLE, WASHINGTON  98106-1271
(206) 623-4990

AMC 20 (5th Cir.1988), *Great Lakes Insurance SE v. Lassiter*, 2022 WL 1288741 (S.D.Fla.2022), *Joseph v. Great Lakes Reinsurance (UK) PLC*, 2011 U.S.Dist LEXIS 35428 (N.D.Oh.2011), *Great Lakes Reinsurance (UK) v. Rosin*, 757 F.Supp.2d 1244, 1251, 2011 A.M.C. 223 (S.D.Fla.2010), *Great Lakes Reinsurance (UK), PLC v. Sea Cat I, LLC*, 653 F.Supp.2d 1193, 2010 A.M.C. 703 (W.D.Ok.2009), *Great Lakes Reinsurance (UK) PLC v. Dion*, 2010 A.M.C. 338 (S.D.Cal.2009*), Great Lakes Reinsurance (UK) PLC v. S. Marine Concepts, Inc.*, 2009 A.M.C. 1093 (S.D.Tex.2008).  Vital to note, in none of these cases was it relevant that New York's law was different from the law of the state that was displaced. *Id*.  For instance, in the *Durham Auctions* case, it made no difference whatsoever that New York law was less favorable to the vessel owner than Mississippi law.  *Supra*.  Therefore, in the present case, the Policy's election for New York law is enforceable, notwithstanding the fact that Washington law may be more favorable to REGULINSKI.

### 2. Breach of the Fire Extinguisher Warranty

In the present matter, the facts are totally undisputed that the tags on the Vessel's fire extinguishing were expired and that the fire extinguishing equipment had not been inspected and certified in many years.  Ghidoni Decl., ¶¶14-21, Goldman Decl., Exh. 10.  This is a clear breach of the fire extinguisher warranty.  Goldman Decl., Exh. 7, p. 13.  Therefore, the only matter for this Court is to determine the impact of the breach.

It is an open question whether the present fire extinguisher warranty is governed by an entrenched rule of federal admiralty law or by New York law.  *Lloyd's of London v. Pagan-Sanchez*, 539 F.3d 19; 2008 A.M.C. 1990 (1st Cir.2008) (holding the present fire extinguisher warranty valid and enforceable under federal admiralty law), *Clear Spring Property and Casualty Company v. Viking Power LLC*, 608 F.Supp.3d 1220 (S.D.Fla.2022) (holding the

{29758-01042376;1}
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT– Page 13
(Case No. 2:21-cv-01241-KKE)

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW
SUITE 500
SEATTLE, WASHINGTON  98106-1271
(206) 623-4990

present fire extinguisher warranty valid and enforceable under New York law).  There is no decision from the Ninth Circuit resolving the question.  Fortunately, it is unnecessary to untangle this knot because the rule is the same under both federal admiralty law and New York law, "strict or literal" compliance.  *Id*.  Under this rule, the failure of the insured to strictly, literally comply with the terms of an express warranty in a policy of marine insurance results in the policy affording no coverage for the loss, even where the breach of the express warranty played no role whatsoever in the loss.  *Id*.  This is in accord with the Policy's express term detailing the impact of such a breach.  Goldman Decl., Exh. 7, p. 14.

In *Pagan-Sanchez*, the coverage dispute arose when the vessel sank due to an exhaust hose which became disconnected and allowed water to enter the vessel.  *Id*. at 21.  Exactly like the present matter, the post-loss investigation established that the vessel's various fire extinguishers had not been inspected or certified within the preceding year.  *Id*.  Exactly like the present matter, there was no dispute that the breach of the fire extinguishing equipment warranty played no role whatsoever in the loss.  *Id*.  However, contrary to the choice of law clause in the policy of marine insurance (which called for either federal admiralty law or New York law), the district court applied Puerto Rican law and held that the fire extinguishing equipment warranty was unenforceable because the loss was causally unrelated to the breach.  *Id*.

On appeal, the First Circuit issued multiple rulings appliable to the present motion.  First, the court held that the fire extinguishing equipment warranty was unambiguous and had to be applied exactly as written.  *Id*. at 23.  Since the insured had presented zero evidence that the fire extinguishers had been properly recertified and retagged within the previous year, the insured was undoubtedly in breach of the warranty.  *Id*.  Second, turning to the effect of the

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW
SUITE 500
SEATTLE, WASHINGTON  98106-1271
(206) 623-4990

breach, the First Circuit held that, under federal admiralty law, "breach of a promissory warranty in a maritime insurance contract excuses the insurer from coverage." *Id*. at 24. Therefore, notwithstanding complete agreement between the parties that the breach of the warranty played no role whatsoever in the loss, the First Circuit Court of Appeals held that the breach of the warranty was an absolute bar to coverage. *Id*.[2]

Applying *Pagan-Sanchez* to the present matter, REGULINSKI's failure to tag and certify the Vessel's fire extinguishing system since 2012 breached the fire extinguisher warranty and absolutely bars coverage for the loss.

Alternatively, the district court in another case, *Viking Power*, was not convinced that the fire extinguisher warranty was governed by an entrenched rule of federal admiralty law. *Viking Power*, *supra*.   *Viking Power* involved an identical policy of marine insurance, an identical fire extinguisher warranty, and an identical choice of law clause. *Id*.[3]  Therefore, since this issue was governed by state law, the Southern District of Florida enforced the marine insurer's choice of law clause, which was identical to GLI's choice of law clause, and held that the fire extinguisher warranty was enforceable under New York law. *Id*.

In the present case, it makes no difference which law is applied, federal admiralty law or New York law.  Either way, REGULINSKI's failure to keep the Vessel's fire extinguishers properly certified and tagged breached the Policy's fire extinguisher warranty and bars coverage for the loss.

///

---

[2] The First Circuit held that the same rule applies under New York law. *Id*. at 25.

[3] Also relevant and discussed below, the *Viking Power* case also involved *uberrimae fidei* and the various seaworthiness warranties. *Id*.

{29758-01042376;1}
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT– Page 15
(Case No. 2:21-cv-01241-KKE)

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW
SUITE 500
SEATTLE, WASHINGTON  98106-1271
(206) 623-4990

### 3. Breach of the Express and Implied Seaworthiness Warranties

Under federal admiralty law, every policy of marine insurance contains two implied warranties; (1) that the vessel is seaworthy at the inception of the policy and (2) that the insured will exercise due diligence to keep the vessel seaworthy during the life of the policy.[4]  *Atlantic Specialty Insurance Company v. Coastal Environmental Group Inc.*, 945 F.3d 53, 68 (2d Cir.2019), *Underwriters at Lloyd's v. Labarca*, 260 F.3d 3, 7-8; 2001 A.M.C. 2409 (1st Cir.2001), *Saskatchewan Government Ins. Office v. Spot Pack, Inc.*, 242 F.2d 385; 1957 A.M.C. 655 (5th Cir.1957), *McAdam v. State Nat. Ins. Co., Inc.*, 28 F.Supp.3d 1110, 1122 (S.D.Cal.2014), *Axis Reinsurance Co. v. Resmondo*, 2009 A.M.C. 2597 (M.D.Fla.2009), *Royal Indem. Co. v. Deep Sea Intern.*, 619 F.Supp.2d 14, 26; 2007 A.M.C. 1872 (S.D.N.Y.2007), *The Connecticut Indem. Co. v. Palivoda*, 2005 A.M.C. 2047 (M.D.Fla.2005), *Certain Underwriters at Lloyd's, London Subscribing to Policy 200-451-8464 v. Johnston*, 124 F.Supp.2d 763, 771; 1999 A.M.C. 1452 (D.P.R.1999), *Continental Ins. Co. v. Lone Eagle Shipping Ltd. (Liberia)*, 952 F.Supp. 1046, 1068; 1997 A.M.C. 1099 (S.D.N.Y.1997), *aff'd*, 134 F.3d 103; 1998 A.M.C. 964 (2d.Cir.1998) *Reliance Ins. Co. v. McGrath*, 671 F.Supp. 669, 675-76; 1987 A.M.C. 1916 (N.D.Cal.1987).   If the vessel is unseaworthy at the inception of the policy, the policy is void and affords no coverage for the loss, without regard to fault or causation.  *Id.*  If the vessel is unseaworthy at the time of the loss, then the policy affords no coverage for any loss causally related to the unseaworthy condition.  *Id.*

In addition, the Policy contains its own express seaworthiness warranty, under which REGULINSKI warranted that the Vessel would be seaworthy at all times.  Goldman Decl., Exh.

---

[4] Since the implied seaworthiness warranties is an issue governed by an entrenched rule of federal admiralty law, it is neither necessary to apply GLI's choice of law clause, nor is it necessary to grapple with the circuit split which is the subject of the *Raiders* case now pending before the Supreme Court.  *Wilburn Boat*, at 314 ("And States can no more override such judicial rules validly fashioned than they can override Acts of Congress").

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW
SUITE 500
SEATTLE, WASHINGTON  98106-1271
(206) 623-4990

7, p. 12.  Under the Policy's express terms, breach of this warranty absolutely voids coverage from inception, regardless of fault of causation.  *Id.* at p. 14.

To be seaworthy, a vessel must be fit for its intended purpose.  *Underwriters at Lloyd's v. Labarca*, 260 F.3d 3; 2001 A.M.C. 2409 (1st Cir.2001).  This applies not only to the vessel's hull but to its crew and appurtenances.  *Union Oil Company of California v. M/V Point Dover*, 756 F.2d 1223, 1229 (5th Cir.1985), *Director General of India Supply Mission for and on Behalf of President of Union of India v. Steamship Maru*, 459 F.2d 1370, 1372; 1972 A.M.C. 1694 (2d Cir.1972), *The Maria*, 91 F.2d 819; 1937 A.M.C. 934 (4th Cir.1937), *State Nat. Ins. Co. v. Anzhela Explorer, L.L.C.*, 812 F.Supp.2d 1326 (S.D.Fla.2011), *The Connecticut Indemnity Company v. Palivoda*, 2005 A.M.C. 2047; 2005 WL 3675959, p. 5 (M.D.Fla.2005).  The Policy expressly imposes the same standard of fitness to the physical structure of the Vessel, as well as the Vessel's parts, equipment, gear and crew:

> k. 'Seaworthy' means fit for the Scheduled Vessel's intended purpose. Seaworthiness applies not only to the physical condition of the hull, but to all its parts, equipment and gear and includes the responsibility of assigning an adequate crew.  For the Scheduled Vessel to be seaworthy, it and its crew must be reasonably proper and suitable for its intended use.

Goldman Decl., Exh. 7, p. 3.

Where the facts are undisputed, the determination of whether a vessel is seaworthy is a question of law which is for the court to decide.  *Martinez v. United States*, 705 F.2d 658; 1983 A.M.C. 1925 (2d Cir.1983).

Applying these principles, the present case is easily resolved based on the undisputed sworn evidence of GLI's adjuster, Ghidoni, that the failure to properly inspect, certify, and tag the Vessel's fire extinguishing system rendered the Vessel unseaworthy.  Ghidoni Decl., ¶¶19-21.  A Vessel which is not in a proper state to respond to the most straightforward of fire risks is not "fit for [its] intended purpose," either at the inception of the Policy or at the time of the loss.  Goldman Decl., Exh 7, p. 3.  Therefore, the Vessel was unseaworthy both at the inception of the Policy and at the time of the loss, with the result that the Policy is void under both federal

{29758-01042376;1}
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT– Page 17
(Case No. 2:21-cv-01241-KKE)

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW
SUITE 500
SEATTLE, WASHINGTON  98106-1271
(206) 623-4990

admiralty law and the Policy's express terms.

### 4. Material Misrepresentation in the Letter of Compliance

Under federal admiralty law, all policies of marine insurance are policies of *uberrimae fidei* ("utmost good faith").  *New Hampshire Ins. Co. v. C'Est Moi, Inc.*, 519 F.3d 937, 938; 2008 A.M.C. 931 (9th Cir.2008), *Certain Underwriters at Lloyds, London v. Inlet Fisheries Inc.*, 518 F.3d 645, 648; 2008 A.M.C. 305 (9th Cir.2008), *Cigna Property and Cas. Ins. Co. v. Polaris Pictures Corp.*, 159 F.3d 412, 420; 1999 A.M.C. 1 (9th Cir.1998).  Under the doctrine of *uberrimae fidei*, applicants for a policy of marine insurance are under a duty to truthfully disclose to the underwriter all facts material to the evaluation of the risks, even if not asked.  *Id*. If an applicant fails to disclose a material fact, then the policy of marine insurance is void from its inception, entirely without regards to fault or causation.  *Id*.

"A non-disclosed fact is material if it would have affected the insurer's decision to insure at all or at a particular premium."  *Inlet Fisheries*, at 655, *quoting, N.Y. Mar. & Gen. Ins. Co. v. Tradeline*, 266 F.3d 112, 123 (2d Cir.2001).  "The fact that the insurer has demanded answers to specific questions in an application for insurance is in itself usually sufficient to establish materiality as a matter of law."  *C'Est Moi*, at 939.  For instance, in the *C'Est Moi* case, the insurance application specifically demanded truthful disclosure of the vessel's purchase price and present insurer.  *Id*.  Since this was information specifically requested, the materiality of the false information provided by the application was established as a matter of law.  *Id*.

Applying the rule of *uberrimae fidei* to the present matter, the only pertinent facts are totally undisputed.  First, with respect to the nondisclosure, this memorandum of law has thoroughly detailed the material facts which REGULINSKI did not truthfully disclose: for almost a full decade prior to the issuance of the Policy, REGULINSKI falsely represented that, in compliance with the 2011 Survey Report and 2020 Survey Report, the Vessel's fire extinguishing equipment had been properly certified and tagged.  Usher Decl., ¶19.

{29758-01042376;1}
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT– Page 18
(Case No. 2:21-cv-01241-KKE)

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW
SUITE 500
SEATTLE, WASHINGTON  98106-1271
(206) 623-4990

Second, Usher's declaration exhaustively details the impact that truthful disclosure would have had on his judgement as a reasonable and prudent underwriter.  In brief:

- It is the longstanding policy of Usher and Concept to require that all survey recommendations be completed.
- The completion of survey recommendations is always material to the judgment of any prudent an intelligent underwriter because these recommendations, particularly those concerning safety gear like the fire extinguishers, impacts the seaworthiness of a vessel.
- Truthful disclosure that REGULINSKI failed to complete the recommendations in the 2011 Survey Report and the 2020 Survey Report pertaining to the Vessel fire suppression system would have caused Concept to refuse to issue any policy of marine insurance.

Usher Decl., ¶¶30-41.

Based on these undisputed facts, the application of the law is very simple.  Since truthful disclosure of the condition of the Vessel's fire suppression system by REGULINSKI would have caused GLI to refuse to issue the Policy, the duty of *uberrimae fidei* was breached and the Policy is void from its inception, therefore affording no coverage for the present loss.

## <u>CONCLUSION</u>

As detailed herein, the simple facts on which this motion are based are undisputed: (1) the Vessel's fire suppression system had not been properly certified and tagged since 2011, breaching the express warranty under the Policy and barring coverage, (2) the failure to keep the Vessel's fire suppression system in working order rendered the Vessel unseaworthy, breaching the express and implied warranties and barring coverage, and (3) false representation pertaining to the fire suppression system was a misrepresentation material to the decision of GLI's underwriter to issue the Policy, voiding the Policy from its inception.  Therefore, on these multiple bases, the Policy can afford no coverage for the loss by lightning strike.

WHEREFORE, GLI moves that this Court award summary judgment on the basis of all three of GLI's causes of action and award all such further relief as may be appropriate in the premises.

///

{29758-01042376;1}
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT– Page 19
(Case No. 2:21-cv-01241-KKE)

Le Gros Buchanan
& Paul
4025 DELRIDGE WAY SW
SUITE 500
SEATTLE, WASHINGTON  98106-1271
(206) 623-4990

1

DATED this 10th day of May, 2024.

2

3

LEGROS BUCHANAN & PAUL                THE GOLDMAN MARITIME LAW GROUP

4

By: *s/ Markus B.G. Oberg*                 By:  *s/ Steven E. Goldman*
Markus B.G. Oberg, WSBA #34914       Steven E. Goldman, Fla. Bar No. 345210

5

4025 Delridge Way SW, Suite 500        *Pro Hac Vice*
Seattle, Washington 98106               401 East Las Olas Blvd., Suite 1400

6

Tel: 206.623.4990                       Fort Lauderdale, FL 33301
Fax 206.467.4828                        T 954.332.2448

7

Email: moberg@legros.com                F 954.832.0878

8

Email: steven@goldmanmaritime.com

*Attorneys for Plaintiff*

9

*Attorneys for Plaintiff*

10

11

12

I certify that this document contains 5,832 words in compliance with local rules.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

{29758-01042376;1}
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT– Page 20
(Case No. 2:21-cv-01241-KKE)

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW
SUITE 500
SEATTLE, WASHINGTON  98106·1271
(206) 623-4990

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**CERTIFICATE OF SERVICE**

I hereby certify that on May 10, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

**HOLMES WEDDLE & BARCOTT, P.C.**

Michael A. Barcott

3101 Western Ave, Suite 500

Seattle, WA 98121

mbarcott@hwb-law.com

I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Signed at Seattle, Washington.

*s/ Sheila Baskins*

Sheila Baskins, Legal Assistant

4025 Delridge Way S.W., Suite 500

Seattle, Washington 98106

Telephone:  206-623-4990

Facsimile:  206-467-4828

sbaskins@legros.com

Le Gros Buchanan & Paul
4025 DELRIDGE WAY SW
SUITE 500
SEATTLE, WASHINGTON  98106-1271
(206) 623-4990